UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 2:26-cv-00956-AB-ASx | Date: | June 30, 2026 |
| --- | --- | --- | --- |

| Title: | *Elisabeth Pompeo, et al. v. RATP Dev USA, LLC, et al.* |
| --- | --- |

Present: The Honorable    **ANDRÉ BIROTTE JR., United States District Judge**

| Evelyn Chun | N/A |
| --- | --- |
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
| --- | --- |
| None Appearing | None Appearing |

**Proceedings:**    **[In Chambers] ORDER <u>GRANTING</u> PLAINTIFF'S MOTION FOR REMAND [Dkt. No. 15]**

Pending before the Court is Plaintiff Elisabeth Pompeo's ("Plaintiff") Motion for Remand ("Motion," Dkt. No. 15). Defendants RATP Dev USA, LLC and RATP Dev USA, Inc. ("Defendants") filed an opposition ("Opp'n," Dkt. No. 16) and Plaintiff filed a reply ("Reply," Dkt. No. 19). For the following reasons, Plaintiff's Motion is **GRANTED**.

## I.    BACKGROUND

On December 16, 2025, Plaintiff Elisabeth Pompeo filed her Complaint in the Santa Barbara County Superior Court on behalf of herself and others similarly situated, alleging eleven causes of action for violation of various sections of the Cal. Labor Code and the Cal. Bus. & Profs. Code § 17200. *See* Compl. (Dkt. No. 2-1). On January 29, 2026, Defendants RATP Dev USA, LLC and RATP Dev USA, Inc., removed the case to this Court on two grounds: federal question jurisdiction through complete preemption pursuant to § 301 of the Labor Management Relations Act ("LMRA"), and diversity jurisdiction, 28 U.S.C. §

1332(a)(1). *See* Notice of Removal ("NOR," Dkt. No. 1) ¶ 15. Plaintiff's Motion for Remand argues that the Court lacks federal question jurisdiction because her claims are not preempted by § 301 of the LMRA, and that the Court lacks diversity jurisdiction because Defendants have not established that the amount in controversy is not satisfied.

## II.  LEGAL STANDARD

A defendant may remove a civil action from state court to federal court if the federal court has original jurisdiction over the action. 28 U.S.C. § 1441(a). There is a strong presumption against removal jurisdiction, so it "must be rejected if there is any doubt as to the right of removal in the first instance." *Geographic Expeditions, Inc. v. Est. of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1107 (9th Cir. 2010) (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)). Accordingly, the removing party bears a heavy burden of establishing that removal is proper. *Id.*

## III.  DISCUSSION

### A. Plaintiff's Claims Are Not Preempted By Labor Management Relations Act Section 301

Defendants removed this action to federal court on the ground that Plaintiff's claims are preempted by LMRA § 301 because she seeks to represent a putative class that would include individuals whose employment is governed by a collective-bargaining agreement ("CBA") negotiated between Defendants and the relevant unions. Plaintiff argues that her claims are not preempted because she is not a union member, cannot access the union grievance procedures in the CBAs, and her claims arise from California law.

Section 301 of LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). The Supreme Court has held that this provision is "a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985) (*Lueck*) (citing *Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 456-57 (1957). This federal common law, in turn, "preempts the use of state contract law in CBA interpretation and enforcement." *Cramer v. Consol. Freightways Inc.*, 255 F.3d 683, 689 (9th Cir. 2001), *as amended* (Aug. 27, 2001) (en banc). "Preemption

under § 301 is not limited to 'cases specifically alleging contract violation' [] but also applies 'when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract'.'" *Matson v. United Parcel Serv., Inc.*, 840 F.3d 1126, 1132 (9th Cir. 2016) (citing *Lueck*, 471 U.S. at 202).

The Ninth Circuit created "a two-part test to determine whether a state law claim is preempted under § 301." *Matson*, 840 F.3d at 1132 (citing *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059-60 (9th Cir. 2007)). First, a court must first ask "whether a particular right inheres in state law or, instead, is grounded in a CBA." *Burnside*, 491 F.3d at 1060. "If the right exists solely as a result of the CBA, then the claim is preempted, and our analysis ends there." *Id.* at 1059. "If, however, the right exists independently of the CBA, we must still consider whether it is nevertheless 'substantially dependent on analysis of a collective-bargaining agreement.'" *Id.* To determine whether a state law right is "substantially dependent" on the terms of a CBA, a court must decide whether the claim can be resolved by "look[ing] to" rather than interpreting the CBA. *Id.* at 1060 (alterations in original) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987); *Livadas v. Bradshaw*, 512 U.S. 107, 125 (1994)). "If the latter, the claim is preempted; if the former, it is not." *Burnside*, 491 F.3d at 1060.

### 1. Plaintiff's Claims Are Not Grounded in a Collective-Bargaining Agreement

To determine whether a right is independent of a CBA, a court must focus on "the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement, . . . and not whether a grievance arising from 'precisely the same set of facts' could be pursued. *Livadas*, 512 U.S. at 123–24 (citation omitted). "Only if the claim is 'founded directly on rights created by [a] collective-bargaining agreement[ ]' does § 301 preempt it." *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1033 (9th Cir. 2016) (citation omitted).

Defendants argue that because Plaintiff seeks to represent a putative class that includes members covered by at least one CBA between Defendants and the unions, her claims are preempted by § 301. Opp'n at 9. Plaintiff responds that the Court must determine preemption based on her claims alone because she is the only named plaintiff in this action. Reply at 8.

"The usual rule in class actions is that to establish subject matter jurisdiction one looks only to the named plaintiffs and their claims." *Gonzalez v. United States*

*Immigr. & Customs Enf't*, 975 F.3d 788, 810 (9th Cir. 2020) (citation omitted).
Here, Plaintiff's Complaint asserts eleven claims for relief: (1) failure to pay
minimum wages; (2) failure to pay overtime wages; (3) failure to provide meal
periods or pay compensation thereof; (4) failure to provide rest periods or pay
compensation thereof; (5) failure to provide vacation wages; (6) failure to properly
calculate and compensate sick pay; (7) failure to provide accurate itemized wage
statements; (8) failure to reimburse for necessary business expenditures; (9) failure
to keep accurate time and wage records; (10) failure to timely pay final wages
upon separation; and (11) unfair business practices. Compl. ¶¶ 39–102. Plaintiff's
first ten claims arise under California's Labor Code, and the last claim arises under
California's Unfair Competition Law. *Id.* at ¶¶ 12–22.

The parties agree that Plaintiff is a non-union employee and is not subject to
a CBA. Mot. at 3; NOR ¶ 12. Because Plaintiff is not in a union, there is no CBA
that confers her rights and supplants or preempts the Labor Code relative to
Plaintiff; instead, Plaintiff's rights derive from the California labor code. But
Defendants argue that by seeking to assert claims on behalf of all non-exempt
employees, including union employees, Plaintiff attempts to "stand in their shoes
for purposes of litigating" alleged wage and California Labor Code violations.
Opp'n at 9–10. But Courts in the Ninth Circuit look only to the named plaintiffs'
claims to determine subject matter jurisdiction. *Gonzalez*, 975 F.3d at 810.
Therefore, the Court's analysis is informed only by Plaintiff's employment status
and the claims she asserts and not those of putative class members. That Plaintiff
seeks to represent a class that includes union members is not relevant.

Because Plaintiff's claims arise from rights conferred by California state law
and not from a CBA, her claims are not preempted under the first *Burnside* factor.[1]

## 2. Plaintiff's Claims Do Not Substantially Depend on the Terms of a CBA.

"[T]o determine whether a state law right is 'substantially dependent' on the
terms of a CBA,' [a court must] ask 'whether the claim can be resolved by
'look[ing] to' versus interpreting the CBA.'" *Matson*, 840 F.3d at 1132 (quoting
*Burnside*, 491 F.3d at 1060). "If the latter, the claim is preempted; if the former, it

---

[1] Because Defendants' preemption argument turns entirely on the argument that
putative class members' claims are relevant, and because this is not the law, the
Court questions whether it needs to go any further. Nevertheless, the Court will
address the second *Burnside* factor.

is not." *Burnside*, 491 F.3d at 1060. The Ninth Circuit has emphasized that "the term 'interpret' is defined narrowly [in this context]—it means something more than 'consider,' 'refer to,' or 'apply.'" *Matson*, 840 F.3d at 1132 (citation omitted). While the "'look to'/'interpret' distinction is 'not always clear or amenable to a bright-line test,'" *Burnside*, 491 F.3d at 1060, "a *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law." *Caterpillar Inc.*, 482 U.S. at 399. A state law claim may avoid preemption when "it does not raise questions about the scope, meaning, or application of the CBA." *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1153 (9th Cir. 2019).

The Court need not interpret a CBA between Defendants and union members of the putative class because the putative class members are unnamed. *See Delgado v. Lakin Tired W., LLC*, No. CV 24-10602-DMG (ASX), 2025 WL 1707196, at *1–3 (C.D. Cal. June 18, 2025). Plaintiff's eleven causes of action arise under California state law. Compl. ¶¶ 39–102. The CBAs contain provisions addressing meal periods, premium overtime wage rates, and grievance and arbitration procedures for resolving disputes about union employees' wages and working conditions. Opp'n at 16. However, Plaintiff was not a union member at any time during her employment. Mot. at 3; NOR ¶ 12. As such, the Court need not interpret a CBA to resolve Plaintiff's claims. Thus, Defendants are merely attempting to inject a federal question into plainly state law claims. *See Caterpillar Inc.*, 482 U.S. at 399; *see also Burnside*, 491 F.3d at 1060.

Plaintiff's claims are not preempted under the second *Burnside* factor.

Because none of Plaintiff's claims are preempted under either *Burnside* factor, this action is not preempted by § 301 of the LMRA, so such preemption cannot provide federal question jurisdiction over this case.

## B. Defendants Have Not Established that the Amount in Controversy Exceeds $75,000 As Required to Establish Diversity Jurisdiction

Under 28 U.S.C. § 1332(a), a district court has original jurisdiction over an action in which the amount in controversy exceeds $75,000, and which is between citizens of different states. The parties do not dispute complete diversity, and the Court finds that it is satisfied. *See* Compl. ¶ 1; *see also* NOR ¶¶ 26–32. However, the amount in controversy is not satisfied.

For purposes of diversity jurisdiction, the amount in controversy is the total
"amount at stake in the underlying litigation." *Theis Research, Inc. v. Brown &
Bain*, 400 F.3d 659, 662 (9th Cir. 2005). "[T]his includes any result of the
litigation, excluding interests and costs, that 'entails a payment' by the defendant."
*Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016).
"Among other items, the amount in controversy includes damages (compensatory,
punitive, or otherwise), the costs of complying with an injunction, and attorneys'
fees awarded under fee-shifting statutes or contract." *Fritsch v. Swift
Transportation Co. of Arizona, LLC*, 899 F.3d 785, 793 (9th Cir. 2018). "[T]he
removing defendant bears the burden of establishing, by a preponderance of the
evidence, that the amount in controversy exceeds the jurisdictional threshold."
*Urbino v. Orkin Servs. of California, Inc.*, 726 F.3d 1118, 1122 (9th Cir. 2013)
(citation omitted).

To determine the amount in controversy, courts first look to the allegations
in the complaint. *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir.
2015). But "where it is unclear or ambiguous from the face of a state-court
complaint whether the requisite amount in controversy is pled[,]" courts apply a
preponderance of the evidence standard, which requires the defendant to provide
evidence showing that it is more likely than not that the $75,000.00 amount in
controversy is met. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th
Cir. 2007) (citing *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir.
1996)). To determine whether the removing defendant has satisfied its burden, the
court "may consider facts in the removal petition" and "summary-judgment-type
evidence relevant to the amount in controversy at the time of removal." *Singer v.
State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (quoting *Allen v.
R & H Oil & Gas. Co.*, 63 F.3d 1326, 1335–36 (5th Cir. 1995)). "[A] damages
assessment may require a chain of reasoning that includes assumptions . . . [but]
those assumptions cannot be pulled from thin air but need some reasonable ground
underlying them." *Ibarra*, 775 F.3d at 1199.

Plaintiff's Complaint does not allege an amount in controversy. In its Notice
of Removal, Defendants estimate that the amount put in controversy by Plaintiff's
Complaint is $201,310.80. This calculation is based only on back pay
($66,589.80), front pay ($44,720), and attorneys fees and costs ($90,000). *See*
NOR ¶¶ 33–49. Defendants' estimate is faulty and does not establish the amount in
controversy.

First, Defendants' estimate includes two elements of damages that Plaintiff
does not seek—back pay or future pay. *See* Compl. Relief Requested p. 24 ¶¶ 2-19

(categories of relief requested, none of which is back pay or front pay). And Plaintiff points out that back pay and front pay—which are typically recoverable for wrongful termination claims—are not available for Plaintiff's claims, which arise under the Labor Code. Therefore, the Court ignores these amounts.

That leaves only Plaintiff's claim for attorneys' fees, which Defendants estimate to be $90,000. But Defendants improperly attribute the entire $90,000 estimate of attorneys' fees for this putative class action to Plaintiff. This is inappropriate here because when "attorneys' fees are not awarded solely to the named plaintiffs in a class action [by the authorizing statute] they [ ] cannot be allocated solely to those plaintiffs for purposes of amount in controversy." *Gibson v. Chrysler Corp.*, 261 F.3d 927, 942 (9th Cir. 2001), *holding modified by Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005). This is because in this action for violations of the Labor Code, "Defendants' obligation to [the employees] is not 'as a group,' but as 'individuals severally.'" *Urbino*, 726 F.3d at 1122 (quoting *Gibson*, 261 F.3d at 944). The Complaint alleges that there are at least 100 class members, *see* Compl. ¶ 32, so at most, $900 in fees is attributable to Plaintiff—an amount far below the jurisdictional threshold.

Defendants' opposition does not salvage their removal. The opposition posits an amount in controversy of $116,467.50, consisting of $26,467.50 in damages, and $90,000 in attorneys' fees. But to reach $26,467.50 in damages, Defendants abandon, without explanation, their allegations regarding front pay and back pay and instead present entirely new calculations for other categories of damages Plaintiff actually seeks in the Complaint (unpaid overtime, premiums for meal and rest breaks, penalties, liquidated damages). Defendants present no authority suggesting that it can invoke, in a brief, damages it did not raise in the NOR. *See Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1245 (10th Cir. 2012) ("In analyzing the propriety of removal, we have held that the burden is on the party requesting removal to set forth, in the notice of removal itself, the underlying facts supporting [the] assertion that the amount in controversy exceeds [the jurisdictional minimum].") (quotation omitted); *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1216-17 (11th Cir. 2007) (noting that the notice of removal is the document which sets forth "the factual bases for federal jurisdiction"). Nor is it clear that Defendants' wholesale abandonment of the two categories of unpled and unavailable damages that its NOR relies on, and its invocation of wholly different categories of damages its NOR never addressed, is an "amendment" of the NOR that may be permissible in this circuit. *See, e.g., Rodriguez v. Circle K Stores Inc.*, No. EDCV190469FMOSPX, 2019 WL 3026747, at *4 (C.D. Cal. July 11, 2019) (rejecting defendant's argument that a new category of damages asserted in its

brief and never raised in the NOR was an amendment to the NOR; instead, it was an attempt to add a new basis for removal after the thirty day removal period had run, so the case was remanded). Here, Defendants did not even acknowledge their maneuver, let alone justify it. The Court therefore declines to consider the new categories of damages that Defendants invoke for the first time in their opposition.

But even if the Court *did* consider these new categories of damages, Defendants still fail. This is because the new damages total only $26,467.50[2], and as discussed above, at most only $900 in attorneys' fees is attributable to Plaintiff. Together, these amounts yield an amount in controversy of $27,367.50, far short of the $75,000 jurisdictional threshold.

For these reasons, Defendants have not met their burden to establish that the amount in controversy is satisfied, so they have not established diversity jurisdiction.

Because Plaintiff's claims are not preempted by the LMRA, and because Defendant has not established diversity jurisdiction, the Court lacks subject matter jurisdiction over this case, so Plaintiff's Motion for Remand is **GRANTED**.

## C. The Court Awards Plaintiff Her Attorneys' Fees

If the Court grants a motion for remand, it may order the defendant to pay the plaintiff its "just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "[T]he standard for awarding fees [under § 1447(c)] should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees . . . only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

Defendants lacked an objectively reasonable basis for removing this case. Defendants' preemption ground turned on the argument that LMRA preemption is based on the putative class members' status as union members and not solely on the named plaintiff's status—a proposition for which Defendants presented no

---

[2] Plaintiff also argues that the violation rate assumptions underlying Defendants' $26,467.50 estimate of these new damage categories are unreasonable. The Court will not address this arguments because, even accepting Defendants' $26,467.50 estimate, as discussed next, the amount in controversy is still not satisfied.

support and that is contrary to "[t]he usual rule in class actions [] that to establish subject matter jurisdiction one looks only to the named plaintiffs and their claims." *Gonzalez*, 975 F.3d at 810.

Nor was it reasonable for Defendants to remove based on diversity jurisdiction. The NOR was patently unreasonable because it relied on categories of damages that Plaintiff does not seek and that are not even available in this wage and hour case, and on an attorneys' fee calculation that, contrary to binding case law, attributed all fees to Plaintiff instead of apportioning them among the class members. Even if it was arguably reasonable for Defendants to attempt to present, in opposition, new calculations based on new categories of damages—and the Court has its doubts—the new calculation also depended on attributing all attorneys' fees to Plaintiff—a fundamentally flawed and unreasonable position.

"Congress thought fee shifting appropriate in some cases" given that "[t]he process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources." *Martin*, 546 U.S. at 140. Defendants' unreasonable removal resulted in all of these negative consequences—delay, increased costs, and, importantly, it wasted the Court's already strained resources. The Court therefore finds it appropriate to award Plaintiff her attorneys' fees and costs.

Plaintiff seeks 14 hours at $475/hour, for a total of $6,650. This includes four hours for drafting the reply and attending the hearing. Because the Court is resolving this Motion without a hearing, the Court will reduce the request by 1 hour (assuming a Zoom hearing, and preparation for the same), yielding a total award of $6,175.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Remand and **REMANDS** this action back to the Court from which Defendants removed it.

The Court further **AWARDS** Plaintiff her attorneys' fees of $6,175, to be paid within 30 days of this order.

**IT IS SO ORDERED**.